IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY SCOTT MILLER, | ) | |
| | ) | CIVIL ACTION NO. 3:18-cv-10 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| BEDFORD COUNTY, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before Magistrate Judge Keith A. Pesto for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636, and Local Civil Rule 72.

**I.   Background**

On April 23, 2018, Plaintiff Jeffrey Scott Miller filed an Amended Complaint, stemming from an incident in which his cellmate at Bedford County Correctional Facility ("BCCF"), James Howard Dively, brutally attacked him. (*See* ECF No. 6). Miller brought his Amended Complaint against the following Defendants: (1) the County of Bedford, (2) BCCF, (3) Troy Nelson, the Warden at BCCF at all times relevant to Miller's Complaint, (4) Gary Wayne Habinyak, an agent or employee of Bedford County and/or BCCF at all times relevant to Miller's Complaint, and (5) other unknown employees of BCCF. (*Id.* at ¶¶ 1–9). Miller's Amended Complaint contained two claims against all Defendants—Negligence (Count I) and Deprivation of Rights under 42 U.S.C. Section 1983 (Count II). (*Id.* at ¶¶ 45–66). Miller also claimed that he was entitled to punitive damages. (*Id.* at ¶¶ 53, 66).

On April 27, 2018, Defendants filed a Motion to Dismiss Miller's Amended Complaint. (ECF No. 7). On August 10, 2018, the Magistrate Judge issued a Report and Recommendation, recommending that Defendants' Motion to Dismiss be granted in part and denied in part. (ECF No. 16 at 2). Specifically, the Magistrate Judge recommended that the Court: (1) dismiss Miller's negligence claim, (2) permit Miller's Section 1983 claim to proceed, (3) dismiss Miller's claim for punitive damages, and (4) strike the unknown Defendants from the litigation. (*See* ECF No. 16). On October 30, 2018, this Court adopted the Magistrate Judge's Report and Recommendation, granting in part and denying in part Defendants' Motion to Dismiss. (ECF No. 18). Accordingly, following this Court's Order, Miller's only remaining claim is a Section 1983 claim against: (1) Bedford County, (2) BCCF, (3) Nelson, and (4) Habinyak.

On January 29, 2020, Defendants filed a Motion for Summary Judgment. (ECF No. 24). On February 16, 2022, the Magistrate Judge filed a Report and Recommendation, (ECF No. 36), recommending that Defendants' Motion for Summary Judgment be granted in part and denied in part. (*Id.* at 1). Specifically, the Magistrate Judge recommended that the Court grant summary judgment as to Miller's claims against Bedford County and BCCF. (*Id.* at 11). The Magistrate Judge further recommended that the Court deny summary judgment as to Miller's claims against Troy Nelson and Gary Habinyak, thereby permitting Miller's claims against those two individuals to proceed to trial. (*Id.* at 1, 11).

The Magistrate Judge notified the parties that, pursuant to 28 U.S.C. § 636(b)(1), they had fourteen days to file written objections to the Report and Recommendation. (*Id.* at 11). On March 2, 2022, Defendants filed objections to the Report and Recommendation (ECF

2

No. 37) and a Brief in Support of their Objections. (ECF No. 39). Both of these submissions were timely. (ECF Nos. 36, 37, 39). On March 16, 2022, Miller filed a Response to Defendants' Objections to the Report and Recommendation, (ECF No. 40), as well as a Brief in Opposition to Defendants' Objections. (ECF No. 41).

## II.     Legal Standard

When a party files timely objections to a magistrate judge's report and recommendation, the district court must "'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); *see also* Local Civil Rule 72.D.2. In doing so, the Court may "accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court is not required to make any separate findings or conclusions when reviewing a recommendation de novo under Section 636(b). *See Hill v. Barnacle*, 655 F. App'x 142, 148 (3d Cir. 2016).

## III.    Discussion

Upon de novo review of the record and the Report and Recommendation, the Court will accept the recommendation of the Magistrate Judge in this matter and will grant in part and deny in part Defendants' Motion for Summary Judgment. (ECF No. 24).

In doing so, the Court notes that it has reviewed all of Defendants' objections (ECF Nos. 37, 39) and generally finds them meritless.[1] The Court will, however, respond to certain of Defendants' objections.

## A. Exhaustion of Administrative Remedies

### 1. The Magistrate Judge's Analysis on This Issue

Regarding exhaustion of administrative remedies, the Magistrate Judge noted that under the "Prison Litigation Reform Act of 1995 (PLRA), '[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law, by a prisoner ... until such administrative remedies as are available are exhausted.'" (ECF No. 36 at 8). The Magistrate Judge further explained that the Supreme Court has outlined three situations in which a grievance system exists but is effectively unavailable to inmates. (*Id.*).

---

[1] The Court clarifies one issue with respect to Defendants' objections. Defendants note that under Supreme Court precedent, inmates are to err on the side of exhaustion when administrative processes are susceptible to multiple reasonable interpretations. (ECF No. 39 at 11) (citing *Ross v. Blake*, 578 U.S. 632, 644 (2016)). Indeed, the Supreme Court has stated that a prison's "procedures need not be sufficiently 'plain' as to preclude any reasonable mistake or debate." *Ross*, 578 U.S. at 644. Further, the Supreme Court has held that when an "administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.*

In his report, the Magistrate Judge stated that a "reasonable inmate could conclude that the grievance policy did not even apply to a retrospective grievance" and Miller "could not have determined at all whether grievances about cell assignments or safety checks are excluded from the grievance procedure." (ECF No. 36 at 9). The Court agrees with Defendants that if BCCF's policy was subject to multiple reasonable interpretations, then Miller was responsible for erring on the side of exhaustion. *Ross*, 578 U.S. at 644. The Court finds that, in this respect alone, Defendants' objections have some degree of merit.

However, as the Court explains in more detail below, *see infra* Section III.A.3.c, the Court's reasoning on this issue differs from the reasoning of the Magistrate Judge. Specifically, the Court holds that under the terms of BCCF's grievance policy, Miller never had the ability to take advantage of BCCF's grievance process. Therefore, because BCCF's policy was not subject to multiple reasonable interpretations, Miller did not need to err on the side of exhaustion.

One of those exceptions is when "the procedural process is 'so opaque that it becomes, practically speaking, incapable of use.'" (*Id.*) (citing *Ross v. Blake*, 578 U.S. 632 at 643–44 (2016)). Based on his review of BCCF's grievance procedure, the Magistrate Judge stated that the procedure was unavailable to Miller because it is "essentially unknowable 'so that no ordinary prisoner can make sense of what it demands.'" (*Id.* at 8–9) (citing *Ross*, 578 U.S. at 644). And, although the Magistrate Judge noted that there are factual disputes relative to whether BCCF apprised Miller of the grievance process, he wrote that "even if the Court as a finder of fact believed Miller did receive the inmate handbook," the exhaustion defense would still be rejected "as a matter of law" because "the language of the inmate grievance process fails to give fair notice of its scope." (*Id.* at 8–10).

2. **Defendants' Objections**

In Defendants' Brief supporting their objections to the Magistrate Judge's Report and Recommendation, Defendants generally disagree with the Magistrate Judge's conclusion that BCCF's grievance procedure was unavailable to Miller. (ECF No. 39 at 6–15).

Further, Defendants state that they were not afforded "notice or [the] opportunity to resolve" the applicability of the exhaustion defense because the Magistrate Judge's "decision concluded there [were] no factual disputes which is incorrect." (*Id.* at 7).

3. **Under the Terms of BCCF's Grievance Policy, Miller Never Had the Ability to Take Advantage of BCCF's Grievance Process**

The Court will first turn to the issue BCCF's grievance procedure and how it operated relative to Miller. In doing so, the Court notes that it agrees with the Magistrate

5

Judge's thoughtful analysis as to the proper disposition of Defendants' Motion. The Court agrees with the Magistrate Judge that the PLRA does not bar Miller's claim against Nelson or Habinyak. However, the Court differs with the Magistrate Judge on the issue of *why* the PLRA does not bar Miller's claim. Therefore, the Court will now provide its analysis of this issue, which the Court will substitute for the Magistrate Judge's reasoning on this issue, as outlined in the "Order of Court" below.

### a. The Magistrate Judge's Reasoning on This Issue

In analyzing whether BCCF's grievance policy was available to Miller, the Magistrate Judge noted that the policy states that "Department/Facility Policies and Procedures" and "Other matters beyond the control of the BCCF" are "**not grievable matters.**" (ECF No. 36 at 8). The Magistrate Judge further explained that BCCF's policy advises inmates to first attempt to resolve grievances "by informally bringing them to the attention of a staff member." (*Id.* at 9). Therefore, the Magistrate Judge stated that a "reasonable inmate could conclude that the grievance policy did not even apply to a retrospective grievance like 'you failed to protect me from my cellmate attacking me.'" (*Id.*). Ultimately, given this and other language in BCCF's policy, the Magistrate Judge held that BCCF's grievance procedure was unavailable to Miller because it "fails to give fair notice of its scope." (*Id.* at 10).

### b. The Parties' Arguments

In responding to the Magistrate Judge's Report, Defendants note that under Supreme Court precedent, even if BCCF's policy was ambiguous, Miller had "the opportunity and obligation to at least file something." (ECF No. 39 at 11–12). Further,

6

Defendants dispute the Magistrate Judge's holding that BCCF's grievance policy is unclear. (*Id.* at 10–11). Defendants state that the "language of the grievance process is easy and clear … if you do not get any satisfaction from talking to a staff member get a form; write your complaint; and put it" in the grievance box. (*Id.*).

For his part, Miller agrees with the Magistrate Judge that given the lack of clarity in BCCF's grievance policy, "it fails to give fair notice of its scope." (ECF No. 41 at 5).

### c. Discussion

#### i. Legal Standard

Prisoners seeking to challenge the conditions of their confinement are subject to the PLRA, which mandates exhaustion of all available administrative remedies before bringing a lawsuit. 42 U.S.C. § 1997e(a). Exhaustion is a threshold requirement that district courts must consider. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Failure to exhaust is an affirmative defense that the defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The PLRA requires proper exhaustion, meaning "complet[ing] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. These "procedural rules are supplied by the individual prisons." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020).

There is "one exception to the mandatory exhaustion requirement: administrative remedies must be available to the prisoner." *Id.* (citing *Ross*, 578 U.S. at 641–42). An administrative remedy is unavailable when it "[1] operates as a simple dead end[,] … [2] is so opaque that it becomes, practically speaking, incapable of use, or [3] when prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (internal quotation marks omitted). When one (or more) of these circumstances arise, "an inmate's duty to exhaust 'available' remedies does not come into play." *Ross*, 578 U.S. at 643. Both the Supreme Court and the Third Circuit have rejected judge-made exceptions to the PLRA. *Downey*, 968 F.3d at 305.

Moreover, in *Downey*, a Third Circuit decision that is highly relevant to the matter now before this Court, the Third Circuit addressed an argument that the plaintiff-inmate had failed to exhaust his administrative remedies because he had not gone through the prison's normal grievance procedures. *Id.* at 305–07. In order to determine whether the plaintiff had failed to exhaust his administrative remedies, the court analyzed the prison's grievance policies, an exercise that is "'essentially a matter of statutory construction.'" *Id.* at 306 (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)).

In reviewing the prison's grievance procedures, the Third Circuit noted that the general "grievance procedures do not apply to every situation. Rather than going through the formal grievance process, the Inmate Handbook clarifies that inmates 'should speak to the nearest staff person as soon as possible' when facing emergency situations." *Id.* Moreover, a relevant policy provided the following guidance to inmates: "[w]hen faced with an incident of an urgent or emergency nature, the inmate shall contact the nearest staff member for immediate assistance." *Id.*

Therefore, because the plaintiff in *Downey* was faced with an "urgent condition" he was "exempt from the typical grievance steps[,]" and his failure to go through the typical grievance steps did not bar his suit. *Id.* at 306–07. The Third Circuit reached this conclusion

8

despite the fact that the plaintiff remained incarcerated for approximately one year after his "urgent condition" had been acted upon by the prison. *Id.* at 303, 307 (stating that "nothing in the [relevant grievance policies] instructed [plaintiff] to file a formal grievance once the harm was complete").

      ii.      **Analysis**

At the onset, the Court notes that the parties agree Miller was still a prisoner at the time he filed his Complaint and Amended Complaint. (ECF No. 26 at ¶ 7; ECF No. 29 at 7). Therefore, he was subject to the exhaustion requirements of the PLRA. 42 U.S.C. § 1997e(a); *George v. Chronister*, 319 F. App'x 134, 137 (3d Cir. 2009) ("[F]or exhaustion purposes under the PLRA, the plaintiff's status as a 'prisoner' is determined at the time his complaint is 'brought' or filed in court, not when the alleged incident(s) occurred.") (citing *Ahmed v. Gragovich*, 297 F.3d 201, 210 (3d. Cir. 2002)).

Turning to BCCF's grievance policy, it states that "[a] grievance can cover any issue, **except for the following, which are not grievable matters:** … (4) Department/Facility Policies and Procedures … (7) Other matters beyond the control of the BCCF." (ECF No. 24-1 at 44–45) (emphasis in original). The policy then outlines the grievance process, directing inmates to first "attempt to make the complaint known to a staff member." (*Id.* at 45). If an inmate's interaction with a staff member does not resolve the issue, the inmate is directed to ask a staff member for a grievance form, fill it out, and submit it to the grievance box. (*Id.*). Depending on the outcome of this initial submission, an inmate's grievance may make it to the "appeal stage[,]" in which case the inmate is directed to forward his or her grievance "with a written explanation … to the Deputy Warden/Warden." (*Id.*).

However, toward the end of BCCF's grievance policy, BCCF offers the following guidance on emergency grievances: "[e]mergency grievances may be filed directly from the inmate to the Warden. An emergency grievance is defined as a matter which the disposition, within regular limits would subject the inmate to a substantial risk of personal injury and or cause other serious and irreparable harm to the inmate." (*Id.*). Because this portion of BCCF's grievance policy states that inmates facing emergency situations may skip the first steps of the policy and go straight to the Warden, it is plain that BCCF's grievance policy places inmates facing emergency situations outside the normal operation of that policy.[2]

Having outlined the terms of BCCF's policy, the Court now examines how those terms operated relative to Miller. The Court first addresses the question of whether Miller was facing "a substantial risk of personal injury" such that BCCF would have directed him to file an emergency grievance.

The answer to this particular question is readily apparent. If the Court were to take a snapshot of the moment when Dively was attacking Miller, an attack that resulted in Miller being life-flighted to Pittsburgh for medical care, (ECF No. 36 at 2), Miller was plainly

---

[2] Reading the grievance policy like a statute, *Downey*, 968 F.3d at 306, the Court notes that the policy states that inmates facing an emergency "may" go directly to the Warden. (ECF No. 24-1 at 45). However, the policy begins by stating that if an inmate has a complaint, he or she "*may* request an Inmate Grievance Form." (*Id.* at 44) (emphasis added). Therefore, because the portion of BCCF's grievance policy pertaining to emergency grievances is no more permissive than the entirety of BCCF's grievance policy, the Court finds that BCCF directed inmates facing emergency situations to go directly to the Warden, rather than going through the typical grievance process.

10

facing "a substantial risk of personal injury."[3] In other words, when (if not before) Dively was attacking Miller, Miller was outside the operation of the normal grievance procedure at BCCF. At this point, BCCF would have directed Miller to file a grievance directly to the Warden. However, Miller obviously could not have gone to the Warden when he was facing a substantial risk of personal injury because Dively was actively attacking him and because Miller could not extricate himself from the situation. (*Id.*).

The Court next turns to whether Miller needed to file an emergency grievance when he returned to BCCF in August of 2016. (ECF No. 26 at ¶¶ 5–6; ECF No. 29 at ¶¶ 5–6).

Once again, BCCF's grievance policy calls for an inmate to file an emergency grievance when he or she is facing a situation that would "subject the inmate to a substantial risk of personal injury and or cause other serious and irreparable harm to the inmate" if that situation were handled "within regular limits." (ECF No. 24-1 at 45). The Court has no indication that Miller was facing a "substantial risk of personal injury" or a risk of "serious and irreparable harm" at the time he returned to BCCF in August of 2016. In other words, BCCF's emergency grievance provision applies to prospective harm, whereas Miller's physical harm was retrospective at the time he returned to the prison. Therefore, BCCF's grievance policy did not direct Miller to file an emergency grievance upon his return to the facility in August of 2016.

---

[3] Given the myriad of factual disputes surrounding the events leading up to Dively attacking Miller (*see* ECF Nos. 25, 26, 27, 29, 31, 32, 36), it is unclear whether Miller knew that he was facing a substantial risk of personal injury at the hands of Dively prior to the moment Dively began to attack him. However, at the moment the attack commenced, Miller did face a substantial risk of personal injury, a fact that is even clearer given the benefit of hindsight.

11

Finally, the Court turns to whether BCCF directed Miller to file a grievance through the typical, non-emergency process upon his return to the facility in August of 2016.

Critically, just as in *Downey*, nothing in BCCF's policy tells inmates who have *previously* experienced emergency situations that they need go through the typical, non-emergency grievance process. (*Id.* at 44–45); *Downey*, 968 F.3d at 307 (stating that "nothing in the [relevant grievance documents] instructed [plaintiff] to file a formal grievance once the harm was complete"). Instead, BCCF's policy tells inmates that they cannot grieve "matters beyond the control of BCCF." (ECF No. 24-1 at 44–45). An already-completed assault by one inmate of another inmate is very much beyond the control of BCCF.[4] Therefore, at the time that Miller returned to BCCF, the terms of BCCF's grievance policy informed Miller that he could not grieve Dively's already-completed attack.[5]

Accordingly, for the foregoing reasons, when the Court applies BCCF's "own grievance policies[,]" the Court holds that at no relevant point in time did Miller have the ability to take advantage of BCCF's grievance policies. *Downey*, 968 F.3d at 307. At the time when Miller was being attacked, BCCF would have directed him to file an emergency

---

[4] For purposes of clarity, the Court stresses that it is not holding that there was nothing BCCF's employees could have done to have prevented Dively from attacking Miller. Rather, the Court finds that once Dively had attacked Miller, it was beyond BCCF's control to go back and undo that attack.

[5] The Court notes Defendants' statement that Miller did not file any grievances regarding events leading up to the attack, such as requesting "to be transferred out of the cell occupied by Dively." (ECF No. 39 at 8–9). However, Miller not grieving pre-attack events does not bar his present suit for two reasons, working together. First, BCCF's grievance policy does not contain a time limit within which prisoners must file a grievance. (ECF No. 24-1 at 44–45). Therefore, at the moment in time when Dively began attacking Miller, Miller was not time-barred from filing any grievance relating to Dively being placed in his cell, etc. Second, at the moment Dively began attacking Miller, the entire situation (including Dively being celled with Miller and similar facts), were all part of the same emergency situation that Miller could not grieve during the attack and that BCCF effectively informed Miller he could not grieve after he returned to the facility in August of 2016.

grievance with the Warden, but he was wholly unable to do so because he was in a prison cell and the attack resulted in his being life-flighted to Pittsburgh. (ECF No. 36 at 2). Upon his return, the terms of BCCF's grievance policy made it clear that Miller was exempt from both the emergency grievance process and the typical non-emergency grievance process. Therefore, because Miller had no administrative remedies that he could exhaust, the PLRA does not stand as a bar to his present suit.

### 4. Notice and Opportunity to be Heard

The Court now considers Defendants' contention that the Magistrate Judge (1) did not afford Defendants notice or an opportunity to resolve the applicability of the exhaustion defense, and (2) concluded that there are no factual disputes with respect to this issue. (ECF No. 39 at 7). Although the Court applies different reasoning than the Magistrate Judge in holding that Miller did not fail to exhaust his administrative remedies, the Court likewise finds, as explained above, that it may appropriately decide the exhaustion issue as a matter of law, even though there are factual disputes present. Accordingly, the Court will respond to Defendants' objections on this issue.

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013). Indeed, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018) (internal quotation marks and citation omitted). When a district court elects "to resolve *factual disputes* regarding exhaustion," it must give some "form of notice to the parties and an opportunity to respond." (*Id.* at 211) (emphasis added).

13

Here, in the course of his Report, the Magistrate Judge neither stated nor implied that there are no factual disputes with respect to the issue of exhaustion. (*See* ECF No. 36). Rather, as the Court explained earlier, the Magistrate Judge noted that there *are* factual disputes, but he held that the Court need not resolve those disputes because, "as a matter of law," the "language of the inmate grievance process fails to give fair notice of its scope." (*Id.* at 8–10). Therefore, Defendants are incorrect when they assert that the Magistrate Judge "concluded that there [were] no factual disputes." (ECF No. 39 at 7).[6]

Further, because the Magistrate Judge did not resolve any factual disputes in his Report, and because this Court is not now resolving any factual disputes, the Third Circuit's holding in *Paladino* is not implicated. *See Paladino*, 885 F.3d at 210–11 (answering the question of what "procedures are required when a district court undertakes to serve as the *fact finder* on the exhaustion issue" by holding that courts must give the parties "some form of notice … and an opportunity to respond") (emphasis added). The Magistrate Judge provided the parties the opportunity to file briefs at the summary judgment stage, as well as the opportunity to object to his Report and Recommendation, and that notice and opportunity to respond are appropriate and sufficient at this point in this case.

Finally, the Court reiterates that under Third Circuit precedent, the Magistrate Judge and this Court are permitted to interpret BCCF's grievance procedure as a matter of law. *Spruill*, 372 F.3d at 232–34 (stating that interpreting a grievance policy is a question of

---

[6] Like the Magistrate Judge, this Court recognizes that there are factual disputes present in this case, and that certain of those factual disputes are relevant to the issue of whether Miller exhausted his administrative remedies. However, as the Court explained earlier, it is able to decide the exhaustion issue as a matter of law without resolving those factual disputes.

14

law, and holding, as a matter of law, that the plaintiff could not be said to have failed to follow the prison's regulations).

### B. Qualified Immunity

The second objection that the Court addresses is Defendants' objection pertaining to the issue of qualified immunity. (ECF No. 39 at 23–24).

The Third Circuit has explained, in the context of an Eighth Amendment claim, that when a plaintiff makes a "showing sufficient to overcome summary judgment on the merits, [he or she has] also made a showing sufficient to overcome any claim to qualified immunity." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001). Indeed, because "deliberate indifference under [*Farmer v. Brennan*, 511 U.S. 825 (1994)] requires actual knowledge or awareness on the part of the defendant, a defendant cannot have qualified immunity if [he] was deliberately indifferent." *Id.* A reasonable individual cannot "believe that [his] actions comported with clearly established law while also believing that there is an excessive risk to" a resident of the prison facility at which he works "and failing to adequately respond to that risk." *Id.*

Here, although the Magistrate Judge did not explicitly address qualified immunity in his opinion (*See* ECF No. 36), he did conclude that a reasonable jury could find in favor of Miller with respect to his *Farmer* claim against "Nelson or Habinyak, or both." (*Id.* at 8). Therefore, because the Magistrate Judge held, and because this Court agrees, that a reasonable jury could find in favor of Miller on the issue of deliberate indifference, neither Nelson nor Habinyak is entitled to summary judgment on the basis of qualified immunity.

Therefore, after *de novo* review of the record and the Report and Recommendation, the following order is entered:

## ORDER OF COURT

AND NOW, this 31st day of March, 2022, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **GRANTS** Defendants' Motion as to Bedford County and Bedford County Correctional Facility. The Court **DENIES** Defendants' Motion as to Nelson and Habinyak.

**IT IS FURTHER ORDERED** that the Court will not adopt the two full paragraphs on page nine of the Magistrate Judge's Report (the paragraphs beginning with "Precedent requires" and "As the Supreme Court advises"), as well as the first full paragraph on page ten of the Magistrate Judge's Report (the paragraph beginning with "Further, the Prison's grievance policy"). (ECF No. 36 at 9–10). The Court will substitute Section III.A.3.c of the foregoing Memorandum in place of those paragraphs. Moreover, the Court will insert Section III.B of the foregoing Memorandum into the Magistrate Judge's Report immediately after Section III.A.3.c. The Court adopts the rest of the Magistrate Judge's Report in full.

**IT IS FURTHER ORDERED** that the clerk shall dismiss Defendant Bedford County and Defendant Bedford County Correctional Facility from this matter. Miller's claim against Defendant Troy Nelson and Defendant Gary Wayne Habinyak is referred back to the Magistrate Judge for further proceedings.

17

BY THE COURT:

_____

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**